UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ELISSA DIANE LAPOINTE,**

      **Plaintiff,**                        **CASE NO.:  8:15-cv-01402-RAL-EAJ**

**v.**

**BANK OF AMERICA, N.A.,**
**a national bank,**

      **Defendant.**
_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
## AND SUPPORTING MEMORANDUM

Plaintiff Elissa Diane Lapointe respectfully moves for the entry of an Order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying this case as a class action.  Plaintiff filed this class action against Defendant Bank of America, N.A. asserting claims for (1) violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §559.55 *et seq.*, and (2) relief under 11 U.S.C. §105(a) for Defendant's violation of the discharge injunction, based on Defendant's practice of attempting to collect mortgage debts discharged in bankruptcy.  Plaintiff requests that the Court certify the following class:

> All individuals who: (1) filed a Chapter 7 or Chapter 13 bankruptcy in the Middle District of Florida, (2) surrendered their home in the bankruptcy proceedings, (3) obtained a discharge, and (4) after they received the discharge, received communications related to the discharged mortgage from or on behalf of Bank of America, N.A., on or after June 15, 2013.

This case meets all of the requirements for class certification set forth in Rule 23 subsections (a) and (b)(3).  The prerequisites of subsection (a) – numerosity, the presence of common questions of law or fact, the typicality of the representative Plaintiff's claims, and

1

her adequacy to represent the class – are all satisfied.  The further requirements of subsection (b)(3), that common questions predominate over individual questions and that a class action is the superior method of adjudicating those common questions, are also met.  Based on its policies, and using form correspondence, Defendant sent communications to numerous consumers relating to mortgages on which the recipient's obligations had been discharged in bankruptcy, violating the FCCPA and the discharge injunction.  For this reason, Defendant's common course of conduct affected Plaintiff and all class members in a uniform fashion. This case involves overarching questions common to the members of the proposed class, the resolution of which are necessary to a finding of liability against the Defendant.  In addition, it would be inefficient for each class member to sue Defendant for the individual damages at stake here.

## BACKGROUND

### I.     Introduction

This class action lawsuit involves a simple set of facts.  Defendant is a national bank doing business in Florida.  Doc. 1 ¶7.  It was the lender on a mortgage taken out by Plaintiff. *Id.* ¶34.  In May 2014, Plaintiff filed for bankruptcy and surrendered the property that secured the mortgage.  *Id.* ¶¶37, 38.  In August 2014, Plaintiff received a bankruptcy discharge.   *Id.* ¶43.   Defendant received notice of Plaintiff's bankruptcy and her representation by an attorney.  *Id.* ¶¶40-45.  Following Plaintiff's discharge in bankruptcy, Defendant sent Plaintiff a series of communications Plaintiff alleges violated the FCCPA and the discharge injunction.  Compl. ¶¶ 23-109 & Ex. B-N.  Numerous Florida consumers

received similar communications.  *See* Defendant's Supplemental Interrogatory Responses, attached as Exhibit 1 at 3.

**II.      Statutory Framework**

**A.      The Bankruptcy Code**

A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ...." 11 U.S.C. § 524(a)(2).  The courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, § 105(a), including imposing "sanctions, including damages, costs and attorney's fees," for violations of bankruptcy court orders. *In re Rush-Hampton Indus., Inc.*, 98 F.3d 614, 617 (11th Cir. 1996).

**B.      The Florida Consumer Collection Practices Act**

The FCCPA "is a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations."  *Harris v. Beneficial Fin. Co. of Jacksonville*, 338 So. 2d 196, 200-01 (Fla. 1976).  It seeks to protect Florida "consumers from the illegal and/or unscrupulous practices of debt collectors and other persons."  *Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002). It "includes a list of prohibited collection practices that give rise to a private cause of action."  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1124 (11th Cir. 2004)

Three subsections of the FCCPA are pertinent here. Section 559.72(7) prohibits any person collecting a debt from "willfully engag[ing] in ... conduct which can reasonably be expected to abuse or harass the debtor." Section 559.72(9) prohibits any person collecting a

debt from "assert[ing] the existence of some ... legal right when such person knows that the right does not exist." Section 559.72(18) prohibits any person collecting a debt from communicating "with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt ...."

### III.     Factual Background and Plaintiff's Claims

Plaintiff obtained a mortgage from Defendant in 2003. Doc. 1 ¶34. In May 2014, she filed a Chapter 7 bankruptcy petition through counsel. *Id.* ¶¶37,41. She filed a "Statement of Intention" in her bankruptcy case stating she intended to surrender the property. *Id.* Ex. A. Defendant received notices from the Bankruptcy Court of Plaintiff's bankruptcy filing, discharge in bankruptcy, and representation by counsel. *Id.* ¶¶40, 41, 42, 45.

Almost immediately after Plaintiff's personal liability on the mortgage was discharged, Defendant began contacting Plaintiff about that debt. Doc. 1 Ex. B-N. In the six months after Plaintiff's discharge, Defendant sent Plaintiff at least thirteen communications. *Id.* These included a letter informing Plaintiff her mortgage was "past due" and listing the payment needed to "bring the account current," *id.* Ex. B, escrow account reviews, *id.* Ex. C, J, offers for loan modifications, including proposed payment amounts, payment dates, and payment coupons,[1] *id.* Ex. D, K, a letter providing the estimated value of the surrendered property, *id.* Ex. E, letters urging Plaintiff to apply for "foreclosure alternatives" or "loan assistance," or "work with" Defendant to avoid foreclosure, *id.* Ex. F, G, H, L, a "short sale" initiation package, *id.* Ex. I, and communications related to hazard insurance, *id.* Ex. M, N.

---

[1]Certain of the documents from Ex. D to the Complaint were inadvertently included in Ex. E, including the payment coupons.

Defendant's communications have not ceased even following the initiation of this lawsuit.  In December 2015, Defendant sent Plaintiff two new communications, attached as Exhibits 2 and 3 to this motion.  Exhibit 2 is correspondence regarding hazard insurance on the home Plaintiff surrendered and Exhibit 3 is an escrow account review on the mortgage on which Plaintiff's liability has been discharged.

Count I of the Complaint alleges Defendant violated the FCCPA because its communications were willful and could be expected to harass Plaintiff, in violation of § 559.72(7); an attempt to collect a debt that was not a legitimate debt, in violation of § 559.72(9); and a communication with a represented debtor, in violation of § 559.72(18). Doc. 1 ¶¶94-100. Count II of the Complaint alleges that Defendant's attempts to collect the discharged mortgage debt violated the discharge injunction and requests that the Court exercise its equitable powers under § 105(a) to enforce the discharge injunction, grant monetary relief, and enjoin Defendant from violating the discharge injunction. *Id.* ¶¶102-09.

## IV.  Procedural History

Plaintiff filed the Complaint in June 2015.  Doc. 1.  Defendant moved to dismiss the Complaint on four grounds: (1) that Plaintiff failed to state a cause of action for violation of the discharge injunction on the theory that Defendant did not demand payment from Plaintiff personally; (2) that Plaintiff failed to state an FCCPA cause of action on the theories Defendant's communications were not harassing or abusive or an attempt to collect a debt that was not legitimate, and that Defendant lacked notice Plaintiff was represented; (3) that the Bankruptcy Code preempts Plaintiff's FCCPA claim; and (4) that the Bankruptcy Code

does not provide a private right of action for violation of the discharge injunction.   Doc. 21. Plaintiff responded in opposition to the motion.  Doc. 24.

The Court denied Defendant's motion to dismiss.   Doc. 28.   The Court held that Plaintiff stated a cause of action for violation of the FCCPA for harassment, attempting to collect a debt that was not owed, and contacting a represented debtor.  *Id.* at 5-6.  The Court rejected Defendant's claim it was entitled or obligated to communicate with Plaintiff regarding the discharged mortgage, because Plaintiff's personal obligation on the mortgage had been discharged, and Plaintiff had surrendered the home on the bankruptcy proceeding. *Id.* at 3.   The Court also held that Defendant could not rely on the disclaimers in its communications to insulate itself from liability for attempting to collect the discharged debt, in that many of the disclaimers "are in tiny inconspicuous print," some were accompanied by "payment coupons with payment amounts, due dates, and payment instructions," and some communications did not include disclaimers. *Id.* at 4.   The Court further stated it was "not convinced that Plaintiff's FCCPA claim is preempted by the Bankruptcy Code."   *Id.* at 6. Nor was the Court persuaded by Defendant's contention "that no private right of action exists for violation of a discharge order."   *Id.* at 4.

## ARGUMENT

### This Case Should Be Certified as a Class Action Pursuant to Federal Rule of Civil Procedure 23.

"It is well-established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way."   *Brown v. SCI Funeral Servs., Inc.*, 212 F.R.D. 602, 603 (S.D. Fla. 2003).  That is precisely the situation in this case.  The proposed class consists of numerous

individual consumers who, absent the certification of a class action, would be unlikely to have the resources to pursue individual actions against the Defendant.  As the United States Supreme Court has recognized, in such situations reality often dictates that the case proceed as a class action or not at all.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Both the facts at issue in this action and the legal issues they raise are particularly well-suited to a class action.  Numerous federal courts have recognized the appropriateness of certifying class actions involving, as this case does, claims of a common course of conduct involving collection efforts alleged to violate a consumer protection statute.  *See, e.g. Keele v. Wexler*, 149 F.3d 589, 594-96 (7th Cir. 1998); *Kalkstein v. Collectco, Inc.*, 304 F.R.D. 114 (E.D. N.Y. 2015); *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696-701 (S.D. Fla. 2004); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700-01 (M.D. Fla. 2000); *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 508-15 (N.D. Cal. 2007).  Indeed, a United States Bankruptcy Court recently found class treatment was appropriate under remarkably similar factual circumstances for a class of debtors who had been sent billing statements on discharged mortgages.[2]  *In re Biery*, 2015 WL 8608804, at * 27 (Bankr. E.D. Ky. Dec. 11, 2015).

---

[2]As discussed in Plaintiff's Response to the Motion to Dismiss, there is a split of authority regarding whether a claim based on an attempt to collect a discharged debt may be asserted as an independent claim rather than in a contempt motion. Doc. 24 at 8-11.  For the reasons Plaintiff explained, the better view is that a private right of action may be asserted for violation of the discharge injunction, *id.*, and the Court stated it was "not convinced that no private right of action exists for violation of a discharge order."  Doc. 28 at 4.  Because *Biery* was certified in the Sixth Circuit, one of the two Circuits in which such claims may proceed only by contempt motion, the cause of action in that case was for contempt.  Nonetheless, the factual background is remarkably similar to this case and the *Biery* court's analysis is informative here.

The Court may certify a class action if the four prerequisites of Rule 23(a) and the requirements of at least one subsection of Rule 23(b) are satisfied.  Because Plaintiff satisfies the requirements of Rule 23(a) and 23(b)(3), this motion should be granted and the Court should certify the class.

A.      <u>The proposed class satisfies the requirements of Rule 23(a).</u>

Under Rule 23(a), there are four requirements for class certification: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) it must appear that the representative parties will fairly and adequately protect the interests of the class ("adequacy").  These four requirements for certification are met here.

### 1. The class is so numerous that joinder of all members is impracticable.

The proposed class satisfies the numerosity requirement.  To satisfy the numerosity requirement of Rule 23(a)(1), "[p]recise enumeration of the members of a class is not necessary."  *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990). Although there is no legally established numerical test, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the numerosity requirement is satisfied.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Additionally, federal courts routinely use "common sense" in determining whether numerosity has been established. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 229-230 (D.N.J. 2005) ("To meet the numerosity requirement, class representatives must demonstrate only

that 'common sense' suggests that it would be difficult or inconvenient to join all class members.") (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997)); *In re Resource America Sec. Litig.*, 202 F.R.D. 177, 181 (E.D. Pa. 2001)("In determining whether a proposed class meets the numerosity requirement, 'a court may accept common sense assumptions.'") (quoting *In re Cephalon Sec. Litig.*, 1998 WL 470160, at *2 (E.D.Pa. Aug.12, 1998)).

While Defendant has been unable to precisely identify at this point in class discovery the number of persons who fit within the class definition, Defendant has agreed to stipulate that the number of persons who: (1) filed a Chapter 7 or Chapter 13 bankruptcy within the Middle District of Florida, (2) surrendered their home in the bankruptcy proceedings, (3) obtained a discharge in the two years before the filing of the Complaint, and (4) received communications from Defendant in its role as a lender and loan servicer, after they received a discharge, is more than 40.  *See* Ex. 1 at 3.  Plaintiff's request was limited to those who received communications related to the discharged mortgage of the same general type as those attached to the Complaint, and did not include those who received unrelated communications such as privacy notices or advertisements.  *Id.* at 2.  Defendant's stipulation alone is sufficient to support a finding of numerosity.

Moreover, notwithstanding Defendant's reluctance to precisely identify the number of class members, common sense dictates the conclusion that the class is numerous.  Defendant is among the largest home lenders in Central Florida,[3] while in turn the Middle District of Florida is one of the busiest Bankruptcy Court districts in the country.  This area was hit

---

[3] Denise Hicks, "Top 5: Central Florida's Largest Mortgage Lenders, *Orlando Business Journal* (Oct. 12, 2012).

particularly hard by the collapse of the real estate market, making it especially likely that homes would be surrendered in bankruptcy proceedings.  As is discussed below, Defendant's communications with debtors are the subject of uniform policies, such that any other debtors in the same situation as Plaintiff could be expected to have received substantially similar communications.

Further, Defendant acknowledged in response to class certification discovery that it had been sued at least eleven times within the Middle District of Florida based on alleged post-discharge collection attempts.  Ex. 1 at 4-5.  Plaintiff's counsel Centrone & Shrader have themselves sued this Defendant at least [5] times on behalf of individual clients within the Middle District of Florida based on post-discharge collection activity relating to a discharged mortgage. Ex. 5 at 1-2. Few debtors who have been through bankruptcy have the wherewithal to initiate litigation based on statutory consumer claims, particularly given the low stakes typically at issue in such claims.  The fact that Defendant has been sued at least fifteen times in this District alone based on similar behavior should allow the court to make a "common sense" determination that the number of class members not only exceeds 40, but is a large multiple of that number.

The class is so numerous as to make joinder of all members impracticable.   The requirement of Rule 23(a)(1) has been met.

### 2.  There are questions of law and fact common to Plaintiff and the class.

There are numerous issues of law and fact common to the proposed class in this case. Under Rule 23(a)(2), the commonality requirement is satisfied if the named plaintiff shares at least one question of fact or law with the prospective class.  The commonality requirement is

a "low hurdle." *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1356 (11th Cir. 2009). "The commonality requirement is satisfied where questions of law refer to standardized conduct by defendants toward members of the proposed class." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992). For example, where the class members' factual circumstances are materially identical and the "questions of law raised by the plaintiff are applicable to each [class] member," the commonality requirement is satisfied. *Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir. 1984). "Not all factual or legal questions raised in the litigation need to be common, so long as at least one issue is common to all class members." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000). A sufficient nexus must also be established between the class representatives and the class members. *Id.* This "nexus is established if the claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

The questions of law and fact in this case are undeniably common. Indeed, the class definition has been narrowly tailored to ensure that only those who have a closely similar factual situation, both to one another and to the class representative, are included in the class. The subject of the action is mortgage-related communications Defendant sent debtors who had surrendered their homes and whose mortgage debts had been discharged in bankruptcy. The affected class members were thus in precisely the same factual circumstances. Moreover, Defendant's communications were form communications with the same or substantially the same contents.[4]   The use of form communications is a hallmark of

---

[4]Defendant has turned over in class certification discovery the forms it uses for communications with its mortgage customers, which are "fill-in-the-blank" form correspondence on which the language pertinent for these proceedings is unchanged from

commonality.  *See Keele*, 149 F.3d at 594 ("Common nuclei of facts are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents") (collecting cases).

Further, detailed policies govern the nature and contents of Defendant's communications with mortgage debtors during and after bankruptcy proceedings.[5]  As a result, Defendant's communications with Plaintiff and the members of the class have followed uniform practices.  Indeed, Defendant's practices are so heavily systematized that its communications did not cease even after Plaintiff filed this lawsuit.  See Ex. 2, 3.  Where a defendant has engaged in standardized practices in the course of attempting to collect a debt, federal courts have found that the commonality requirement is satisfied.  *See, e.g.*, *Simpson v. Safeguard Properties, LLC*, 2015 WL 2193135, at *5 (N.D. Ill. May 7, 2015); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 515 (S.D. Fla. 2013).

Finally, and perhaps most significantly, Defendant's liability to Plaintiff and the

---

customer to customer.  Because these documents have been designated as confidential, and because there is a large volume of them, Plaintiff has not attached them to this motion as an exhibit.  It is not anticipated that the existence of form communications will be a disputed issue in this case.  Should the Court determine that its review of these forms would be helpful in deciding this motion, however, or should Defendant request, Plaintiff will file a motion to file Defendant's form communications under seal.

[5]The policies that govern Defendant's communications with their mortgage customers have also been designated confidential and are also voluminous.  Accordingly, Plaintiff has not made these documents exhibits to the motion.  It is not anticipated that the existence of policies regarding communications with mortgage debtors will be a disputed issue in this case.  Should the Court determine that its review of Defendant's policies would be helpful in deciding this motion, however, or should Defendant request, Plaintiff will file a motion to file Defendant's policies under seal.

members of the class will primarily turn on common legal questions.  It is not in dispute here that Defendant sent Plaintiff communications after she had surrendered her home and received a bankruptcy discharge; the members of the class are in precisely the same circumstances.  The critical issues here will include the legal questions that determine whether sending those communications violated the FCCPA because it was conduct that could be expected to harass a debtor, in violation of § 559.72(7); or that was an attempt to collect a debt that was not a legitimate debt, in violation of § 559.72(9); or whether sending such a communication post-bankruptcy violates the prohibition against communicating with a represented debtor, in violation of § 559.72(18).  Likewise, a critical issue regarding the claim for violation of the discharge injunction will be whether post-discharge communications with debtors regarding relating to a discharged mortgage on property they have surrendered violate the discharge injunction.  Further, the legal issues the Court addressed in deciding the motion to dismiss, regarding whether FCCPA claims are preempted by the Bankruptcy Code and whether a cause of action may be asserted for violation of the discharge injunction, will also be common to all class members.

As required to satisfy the commonality requirement, the common legal questions listed above are "capable of classwide resolution" meaning that determination of any one of these questions "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  As explained in *Biery*, whether post-discharge communications violate the discharge injunction, for example, raises classwide common questions.  2015 WL 8608804, at *13-17.

The above list of common questions of law and fact pertain to Defendant's common

practices and procedures.  They also hinge on the same set of operative facts, which are central to the resolution of the claim of the representative Plaintiff and each member of the proposed class.  The commonality requirement is satisfied.

### 3.  Plaintiff's claims are typical of those presented by the class.

Because Plaintiff asserts claims not only typical of, but identical to, those of the other members of the proposed class, the typicality requirement is easily satisfied in this case. Rule 23(a)(3)'s typicality requirement is satisfied if the class representative is a member of the class and possesses the same interests and suffers the same injury as the class members. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  As the Supreme Court has explained "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157–158, n. 13 (1982).  Typicality does not require identical claims or defenses and factual variations will normally not render a class representative's claims atypical.  *See*, *e.g. Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 65 (S.D. Ohio 1991) (liability claims based on single course of conduct are common to all class members and typical of each, notwithstanding existence of some individual issues).  As long as the claims of the class representative "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The class representative's claims are typical if they "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Here, Plaintiff and all proposed class members received post-discharge communications from Defendant relating to mortgages on which their personal obligations had been discharged, on homes that were surrendered in bankruptcy.  The claims of Plaintiff and all proposed class members are based on the same legal theories: that these post-discharge collection attempts violate the FCCPA and the discharge injunction.  All class members seek the same remedy, statutory and punitive damages and sanctions.  This set of circumstances satisfies the typicality requirement.  *See Keele*, 149 F.3d at 595 (typicality satisfied where by mailing form letters defendants "engaged in the same course of conduct towards" named plaintiff and class members).

Accordingly, the typicality requirement of Rule 23(a)(3) is met here.

**4.  The Plaintiff will fairly and adequately protect the interests of the class.**

Plaintiff and her counsel are adequate representatives of the proposed class.  The adequacy requirement encompasses two questions: (1) whether the named plaintiff and counsel "have any conflicts of interest with other class members"; and (2) whether the named plaintiff and counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.  Stated another way, the representative must not possess interests that are antagonistic to interests of the class and the representative's counsel must be qualified, experienced, and generally able to conduct the proposed litigation.  *CV Reit*, 144 F.R.D. at 698.

The first portion of the adequacy requirement is satisfied here because there is no conflict of interest between the Plaintiff and the members of the class.  As the Fifth Circuit explained in *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981), "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class," the interests of the class are not antagonistic for representation purposes.  *Id.* at 208.  Here, the Plaintiff's claims are typical of and held in common with the claims of all members of the class. The interests of the Plaintiff and the class members are the same: to obtain a determination that Defendant engaged in an unlawful common course of conduct in sending post-discharge communications relating to mortgages on which the debtor's personal liability had been discharged, on homes that had been surrendered, which resulted in damages to the Plaintiff and the class compensable under the FCCPA and Section 105(a).

The second portion of the adequacy test is also satisfied here.  With respect to this criterion, courts generally look to the skill and experience of plaintiff's counsel rather than the personal qualifications of the named plaintiff.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel."); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) (adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel).  The Declarations of Plaintiff's Counsel are attached to this motion as Exhibits 4 and 5.  Plaintiff's Counsel in the instant case will provide fair and adequate representation for the class.  In particular, the class will be represented by a team of experienced litigators with a successful track record in consumer class actions and consumer

protection litigation.   The Kynes Markman & Felman law firm has extensive class action litigation experience.   Ex. 4 Ex. A.   This Court has previously found the Kynes, Markman & Felman law firm to be adequate in the context of a consumer protection class action involving a class significantly larger than this one.   *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008).   The members of the Centrone & Shrader law firm also have significant litigation experience, and in particular, extensive experience in litigating statutory consumer claims.   Ex. 5 Ex. A.   Plaintiff's lawyers are committed to devoting the skills, time, and funding necessary to bring this litigation to a successful conclusion.   Plaintiff's Counsel will provide fair and adequate representation for the class.

Further, Plaintiff will fairly and adequately protect the interests of the class.   She is committed to the prosecution of this action.   She has obtained qualified counsel to prosecute her rights and those of the class.   Plaintiff has been kept informed of the status of this lawsuit, and she understands her responsibilities to the members of the class, including that she will have to act for the benefit of the class and will be required to make decisions on behalf of the class.   *See* Declaration of Elissa Diane Lapointe, attached as Exhibit 6.

Rule 23(a)(4)'s adequacy of representation requirement is satisfied in this case.

**B.**      **The proposed class satisfies the requirements of Rule 23(b)(3).**

In addition to satisfying the requirements of Rule 23(a), the proposed class must be maintainable under one of the provisions of Rule 23(b).   Plaintiff seeks certification pursuant to Rule 23(b)(3).   Rule 23(b)(3) requires that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"

("predominance"); and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Both criteria are met in this case.

### 1.      Common questions of law and fact predominate.

The common issues of law and fact predominate in this case.  While the commonality prong "requires that class members share a single common issue," the predominance requirement mandates "that common issues predominate over issues affecting only individuals." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 414 (W.D. Tenn. 2003).  The fact that some class members may be subject to individual defenses does not preclude a finding of predominance. *Kalkstein*, 304 F.R.D. at 122.

The predominance test does not require that common issues be dispositive of the action or determinative of the liability issues.  Instead, courts should inquire into "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In order to satisfy the predominance test, "common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 80 (D. Md. 1991); *see also Brown*, 212 F.R.D. at 606 (in determining

predominance, "courts generally focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis").

The claims here focus on the issues surrounding Defendant sending form communications to class members in factually similar circumstances. Plaintiff and the class seek to remedy a common legal grievance arising from those common facts. With respect to all class members, Defendant's liability will hinge primarily on the same questions regarding whether their post-discharge communications violated the FCCPA and the discharge injunction – issues the Court has already preliminarily resolved, Doc. 28. The crucial facts that relate to how each consumer was injured are the same. The legal theories applicable to each class member are also largely the same. All the class members share an interest in recovering statutory and punitive damages and sanctions. Questions of law or fact common to the members of the class will thus predominate over questions affecting only individual members. *See Biery* 2015 WL 8608804, at *26; *see also, e.g., Agan*, 222 F.R.D. at 701 ("common issues presented by sending allegedly illegal form letters ... predominate over any individual issues").

The proposed class satisfies the predominance requirement.

## 2. A class action is superior to other methods of adjudication.

Not only do common questions predominate in the present litigation, but also as required by Rule 23(b)(3), a class action is the superior method by which to adjudicate this controversy. "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 289 (E.D. Pa. 2003).

As the United States Supreme Court has held, concerns of fairness and efficiency make a class action superior to hundreds of separate individual trials:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In the context of commercial practices affecting large groups of consumers, it is frequently the unfortunate reality that there will be few cases filed compared to the number of injured parties because of the relatively small size of individual claims.  The consumer class action is the most beneficial device in such circumstances.  "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Rule 23(b)(3) identifies four factors the Court must consider in determining superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

These factors support a finding of superiority here.

As to the first factor, the interests of the class members would not be furthered by their having to undertake the prosecution of individual duplicative actions.  To the contrary, class certification is in the best interest of the class due, among other things, to the expense of litigating hundreds or thousands of individual claims.  A class action is especially appropriate in cases like the instant one in which relatively small damages affect large numbers of people.  For many class members, it would not be economically feasible to file and litigate individual lawsuits to recover damages not likely to exceed a few thousand dollars.[6]  *See* Fla. Stat. § 559.77(b).  In the absence of class certification, the members of the class would be left without any realistic recourse for their injuries.  *See, e.g.*, *Agan*, 222 F.R.D. at 701 (class is "superior method for resolving" statutory consumer claim "because it would be uneconomical to litigate these issues individually").  Indeed, many of the affected consumers are likely unaware of their rights.  *See Hunt*, 241 F.R.D. at 514.

The second factor, the nature and extent of any existing litigation, also weighs in favor of the superiority of a class action.  The focus of the inquiry is on whether there is so much litigation in progress that certifying a class would be unproductive.  *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 640 (D.S.C. 1992).  Here, as discussed above, counsel are aware of about fifteen cases in this District involving similar issues.  The dockets show all but two of those cases have settled or otherwise been concluded.  Accordingly, certifying a class action will not interfere with pending litigation; nor will the pendency of

---

[6]While the dockets show that many of the lawsuits identified by Defendant, Ex. 1 at 4-5, have settled, the amount of those settlements is not a matter of public record in most of those cases.  In those cases in which the amount of the settlement or award is available in the public record, the amount ranged from $2500, *Hosier v. Bank of* America, 3:13-bk-0919, 3:14-ap-00308 (Bankr. M.D. Fla), Doc. 7, to a sanction of $10,000, inclusive of attorney's fees.  *Lopez v. Bank of America*, Case No. 6:11-bk-2921-CCJ (Bankr. M.D. Fla), Doc. 30.

those cases interfere with the litigation of this case. Further, as is discussed above with regard to numerosity, it is believed that the litigation that has been filed against Defendant regarding this issue reflects only a small percentage of the debtors affected by Defendant's practice of attempting to collect discharged mortgage debts.

Third, "[c]oncentrating the litigation in this forum will achieve the primary objective of class actions – namely, achieving economies of time, effort, and expense, assuring uniformity and avoiding repetitive actions." *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001). "[C]lass action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged." *Hunt*, 241 F.R.D. at 514. Defendant's liability in this case will turn primarily on legal issues. It makes sense to resolve those issues in a single forum rather than having numerous courts be required to resolve the same issue repeatedly. Further, uniting the class members' claims in a single case will ensure that all class members who are entitled to relief receive it, when the vast majority of class members would otherwise be left uncompensated.

Finally, the Plaintiff anticipates no difficulties in the management of this litigation beyond those encountered in similar class actions involving alleged corporate wrongdoing. The proposed class will be reasonably sized and consists of residents of the Middle District of Florida. Class members' identities and contact information will be readily ascertainable from Defendant's records; indeed, class membership is based on Defendant having contacted the individual within the past few years. As discussed above, the issues of law and fact presented by this case are overwhelmingly common.

In short, a class action is superior to any other method of resolving this litigation.

## CONCLUSION

For these reasons, the Plaintiff respectfully requests the Court to certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of the class defined as follows:

> All individuals who: (1) filed a Chapter 7 or Chapter 13 bankruptcy in the Middle District of Florida, (2) surrendered their home in the bankruptcy proceedings, (3) obtained a discharge, and (4) after they received the discharge, received communications related to the discharged mortgage from or on behalf of Bank of America, N.A., on or after June 15, 2013.

It is further requested that Plaintiff be designated as representative of the Class and Plaintiff's Counsel be named Class Counsel.

Respectfully submitted,

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes (FBN 0159727)
kyanes@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:      (813) 229-1118
Facsimile:      (813) 221-6750

*Co-Counsel for Plaintiff*
*Elissa Diane Lapointe*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this Response was furnished to

all counsel of record listed below by the CM/ECF System, on January 29, 2016:

Timothy A. Andreu
Bradley Arant Boult Cummings, LLP
tandreu@babc.com

Gus M. Centrone
Brian L. Shrader
Centrone & Shrader, LLC
gcentrone@centroneshrader.com
bshrader@centroneshrader.com

Michelle M. Masoner
Douglas A. Thompson Bryan Cave, LLP
michelle.masoner@bryancave.com
douglas.thompson@bryancave.com

/s/ *Katherine Earle Yanes*
Katherine E. Yanes